IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GREGORY GRAVES,

Plaintiff,

v.

HENKELS & McCOY, INC.,

Defendant.

OPINION and ORDER

24-cv-927-jdp

---

Plaintiff Gregory Graves worked as a groundman for defendant Henkels & McCoy, Inc., a utility and infrastructure engineering company that installed power lines, until he was fired in April 2019. Graves alleges that his coworkers called him racial slurs and made racially insensitive comments at him. He also alleges that Henkels & McCoy underpaid him and did not assign him equal work. Graves brings claims for a hostile work environment and for race discrimination under Title VII of the Civil Rights Act of 1964.

Henkels & McCoy moves for summary judgment, Dkt. 26, contending that it cannot be held liable for creating a hostile work environment and that Graves cannot show that it treated white employees similarly situated to him more favorably. The court will deny Henkels & McCoy's motion for summary judgment because a reasonable jury could find that Graves gave Henkels & McCoy notice that his coworkers were harassing him and could find that Henkels & McCoy discriminated against Graves because of his race.

## BACKGROUND

The court draws the following facts from the parties' proposed findings of fact. These facts are undisputed.

Graves was harassed by his coworkers on an almost daily basis. Graves describes specific incidents involving three coworkers, Derrick, Chase, and Trevor. Derrick ordered Graves to drive a malfunctioning truck, and when Graves questioned whether that would be safe, Derrick responded: "You're the fucking nigger on this crew, you do what we tell you to do." Dkt. 43, ¶ 75. Derrick also called Graves a "nigger bitch." *Id.* Chase mocked Graves while Graves was installing a fence, calling Graves a "fucking nigger" and wildly swinging a sledgehammer near Graves. At another point, Chase shoved Graves and started fighting him for no reason. Trevor and Derrick called Native Americans "timber niggers" and referred to hot days as "Africa hot." *Id.*, ¶¶ 85–86. At one point, Trevor waved a knife in Graves's face.

The court will discuss additional facts as they become relevant to the analysis.

ANALYSIS

Graves asserts that Henkels & McCoy violated Title VII by creating a hostile work environment and by discriminating against him because of his race. Henkels & McCoy moves for summary judgment on both claims.

Summary judgment is appropriate when there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In determining whether Henkels & McCoy is entitled to summary judgment, the court construes all facts and draws all reasonable inferences in favor of Graves. *Lewis v. Ind. Dep't of Transp.*, 173 F.4th 876, 882 (7th Cir. 2026). The essential question at summary judgment is whether a reasonable jury could find for Graves, after drawing all reasonable inferences in his favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. Hostile work environment claim

To succeed on a hostile work environment claim under Title VII, a plaintiff must establish that: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was so severe or pervasive as to alter the conditions of his work environment by creating a hostile or abusive situation; and (4) there is a basis for employer liability. *Jones v. Das*, 164 F.4th 1024, 1032 (7th Cir. 2026).

Henkels & McCoy does not challenge whether Graves was subject to severe or pervasive harassment based on his race. That was a wise choice. Even *one* use of the N-word—an unambiguously racial and animus-laden epithet—can be severe enough to warrant liability. *See Paschall v. Tube Processing Corp.*, 28 F.4th 805, 815 (7th Cir. 2022); *Rodgers v. W.-S. Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993); *see also Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring) ("No other word in the English language so powerfully or instantly calls to mind our country's long and brutal struggle to overcome racism and discrimination against African–Americans."). It is undisputed that Graves was subjected to racial slurs and comments, including the N-word, on an almost daily basis. A reasonable jury could find that Graves was subject to severe *and* pervasive harassment by his coworkers; indeed, it is hard to believe that a reasonable jury could find otherwise.

Henkels & McCoy nevertheless contends that Graves cannot satisfy the employer liability element of his hostile work environment claim. When, as here, a plaintiff's coworkers are responsible for the harassment, then the employer is liable only if it has been negligent in discovering or remedying the harassment. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 904 (7th Cir. 2018). To establish that Henkels & McCoy was negligent and thus may be held liable, Graves must show that Henkels & McCoy: (1) had "notice or knowledge of the

harassment"; and (2) did not take "prompt and appropriate corrective action reasonably likely to prevent the harassment from recurring." *Sanchez v. El Milagro, Inc.*, 176 F.4th 961, 971 (7th Cir. 2026) (citations omitted). Henkels & McCoy contends that Graves failed to provide the company with sufficient notice.

The court must first determine "whether the employer has designated a channel for complaints of harassment." *Parkins v. Civ. Constructors of Ill., Inc.*, 163 F.3d 1027, 1035 (7th Cir. 1998). If so, an employee generally must follow his employer's procedures for reporting harassment to provide his employer with sufficient notice. *Lambert v. Peri Formworks Sys., Inc.*, 723 F.3d 863, 867 (7th Cir. 2013). But an employee need not comply with his employer's procedures for reporting harassment if they are "unclear or inaccessible." *Equal Emp. Opportunity Comm'n v. Vill. at Hamilton Pointe LLC*, 102 F.4th 387, 404 (7th Cir. 2024). This includes when an employer's harassment policy establishes multiple "point people" to whom an employee may report harassment (for example, "all supervisors"). *Bombaci v. J. Cmty. Pub. Grp., Inc.*, 482 F.3d 979, 984 (7th Cir. 2007). When an employer's harassment policy is unclear, an employee may report harassment to someone that he "reasonably believed was authorized to receive and forward" harassment complaints, even if that individual was not a proper "point person" under the employer's procedures. *Young v. Bayer Corp.*, 123 F.3d 672, 674 (7th Cir. 1997) (emphasis omitted).

During orientation, Henkels & McCoy employees received a copy of the company's safety handbook, which included an Equal Employment Opportunity Statement that required employees to "immediately report the alleged harassment" to the employee's "immediate supervisor/manager, any Henkels & McCoy manager, to the Corporate EEO Compliance Office, or [the employee's] Regional EEO Compliance Officer." Dkt. 44, ¶ 8. The policy did

not identify which employees it considered to be "supervisors" or "managers." But the safety handbook listed the following position titles as constituting "Front Line Supervision": "Superintendent, General Foremen, Supervisor, Project Manager (PM), Foreman, Crew Leader, or any Designated Person In Charge." Dkt. 43, ¶ 17. Front-line supervisory employees were required "to enforce H&M safety policies, programs, procedures, and best practices," and were required to "document[] and report to management those employees who violated H&M safety policies and/or procedures." *Id.*, ¶¶ 18–19. Henkels & McCoy's safety handbook also contained the following definition for the term "Management": "H&M personnel who control, supervise, and make decisions related to the work H&M performs and can include any employee from a crew foreman up to the CEO." *Id.*, ¶ 16.

It is undisputed that Graves reported the harassment to three of his foremen, Tom Corrigan, Don Gorka, and Chuck (whose last name is unknown). But Henkels & McCoy asserts that the foremen were not proper "point people" under the company's harassment policy, because they were not Graves's "immediate supervisor/manager" or a "Henkels & McCoy manager." *See* Dkt. 27, at 5–6. Henkels & McCoy also argues that the foreman did not qualify as supervisors for purposes of liability under Title VII because they could not take tangible employment actions against Graves. *See id.* at 6–7.

Graves told three of his foremen that his coworkers were harassing him. Under Henkels & McCoy's safety handbook, foremen are front-line supervisory employees that are required to document and report violations of safety policies and procedures to the management of Henkels & McCoy. Henkels & McCoy's harassment policy was included within the company's safety handbook. A reasonable jury could find that Graves complied with Henkels & McCoy's by reporting the harassment to his immediate front-line supervisory employees. In any event,

the policy establishes multiple "point people" and does not explain which employees are considered to be "supervisors" or "managers." A reasonable jury could find that the company's policy is unclear and that Graves reasonably believed that Corrigan, Gorka, and Chuck were authorized to receive and forward harassment complaints. Either way, Henkels & McCoy had sufficient notice.

The court will deny Henkel & McCoy's motion for summary judgment on Graves's hostile work environment claim.

## B. Discrimination claims

Title VII prohibits employers from discriminating against their employees because of their race. 42 U.S.C. § 2000e-2(a). To succeed on a race discrimination claim, a plaintiff must establish that: (1) he is a member of a protected class; (2) he suffered an adverse employment action; and (3) causation. *Lewis v. Ind. Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). Graves's discrimination claims are based on two adverse actions: (1) Henkels & McCoy underpaid Graves; and (2) it failed to assign Graves work equal to his white coworkers.[1]

Henkels & McCoy contends that Graves's discrimination claims fail because he cannot show that it treated white employees that were similarly situated to Graves more favorably than it treated Graves. Henkels & McCoy's contention is rooted in the burden-shifting framework introduced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The first step of the *McDonnell Douglas* framework requires the plaintiff to present evidence on the elements

---

[1] In his complaint, Graves also asserted that Henkels & McCoy discriminated against him by failing to provide him with light-duty work and by terminating him. Dkt. 1, at 1. Henkels & McCoy moved for summary judgment on these claims, but Graves did not address them in his response, so he has abandoned the claims. *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 n.2 (7th Cir. 1996) ("Bombard abandoned his FMLA claim after failing to respond to the FMLA arguments in FWN's motion for summary judgment.").

of a prima facie race discrimination case, one of which is that "similarly situated employees who were not members of [the plaintiff's race] were treated more favorably." *Tyburski v. City of Chicago*, 964 F.3d 590, 598 (7th Cir. 2020).

The *McDonnell Douglas* framework can be an efficient way to organize, present, and assess evidence. *Markgren v. Saputo Cheese USA, Inc.*, No. 21-cv-429-jdp, 2023 WL 3568967, at *5 (W.D. Wis. May 19, 2023). But the court of appeals has encouraged district courts to focus on the central issue in a race discrimination case, which is whether the evidence as a whole would permit a reasonable jury to conclude that the plaintiff's employer treated him adversely because of his race. *See Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 504–05 (7th Cir. 2017); *Paterakos v. City of Chicago*, 147 F.4th 787, 795 (7th Cir. 2025).

The following are the pertinent facts, which are undisputed. Graves attended an apprenticeship program to do machine operator work as an operator trainee, a position which paid about $6 more per hour. The program required Graves to have his foreman sign a form recording the number of hours Graves worked as a trainee. When Graves asked his foreman to sign the form, the foreman refused, stating that the program was "actually for young white kids," so Graves didn't need him to sign the form. Dkt. 43, ¶ 129. Instead, the foreman authorized payment for only 30 hours of work, even though Graves worked close to 120 hours as a machine operator. Graves therefore did not receive pay for all the hours he worked as a machine operator. At another point, Graves worked as a machine operator for a full work week, but he was paid as a groundman, not as an operator trainee. During the same period, his foreman assigned white workers in the apprenticeship program significantly more machine operator work than he assigned to Graves.

A reasonable jury considering this evidence could conclude that Henkels & McCoy did not pay Graves for the hours he worked as a machine operator because of his race and that it assigned Graves less work as a machine operator than it assigned his white coworkers. The court will therefore deny Henkels & McCoy's motion for summary judgment on these claims.

ORDER

IT IS ORDERED that defendant Henkels & McCoy's motion for summary judgment, Dkt. 26, is DENIED.

Entered July 31, 2026.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge